UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

(ELECTRONICALLY FILED)

CIVIL ACTION NO. _3:19-CV-223-DJH_____

UNITED STATES OF AMERICA                                              PLAINTIFF

vs.

PAMELA SWENSTAD, as heir of                                          DEFENDANTS
LOUISE A. STACKHOUSE
155 Purcell Avenue
Bardstown, Kentucky  40004

DAVID JOE AVERY, SR., as heir of
LOUISE A. STACKHOUSE
1259 Haleydale Road
Sylvania, Georgia  30467

DENISE AVERY, as heir of
LOUISE A. STACKHOUSE
1259 Haleydale Road
Sylvania, Georgia  30467

DANIEL LEE AVERY, as heir of
LOUISE A. STACKHOUSE
2780 Bennets Lane
Bardstown, Kentucky  40004

TIMOTHY SCOTT AVERY, as heir of
LOUISE A. STACKHOUSE
126 Barberry Lane
Bardstown, Kentucky  40004

ANY UNKNOWN HEIRS OF LOUISE A. STACKHOUSE,
AND THEIR UNKNOWN SPOUSES
Serve: Warning Order Attorney

ANY UNKNOWN OCCUPANT(S), TENANT(S) OR
LESSEE(S) OF 155 PURCELL AVENUE, BARDSTOWN, KENTUCKY
Serve:  Warning Order Attorney

COMMONWEALTH OF KENTUCKY
DIVISION OF COLLECTIONS
Serve: Kentucky Attorney General, Andy Beshear
700 Capitol Avenue, Suite 118
Frankfort, Kentucky 40601-3449

## COMPLAINT FOR FORECLOSURE

Plaintiff, the United States of America, states as follows:

1.      This is a mortgage foreclosure action brought by the United States of America on behalf of its agencies, the United States Department of Agriculture, Rural Housing Service also known as Rural Development (hereinafter collectively "RHS"), and the Department of Treasury, Internal Revenue Service ("IRS").

2.      This Complaint is filed to enforce RHS's mortgage interest in the subject property and to resolve any interest the IRS may have in the property by virtue of a recorded tax lien.

3.      Since both Borrowers on the RHS loan have passed away, RHS is required to name all of Louise Stackhouse's heirs as defendants in this foreclosure to allow them to assert an interest in the property if they so desire.  Through this action, the United States does not seek to impose any personal liability upon any heirs for the RHS mortgage loan.

4.      Jurisdiction arises under 28 U.S.C. § 1345.  Venue is proper in this judicial division, where the subject property is located.

5.      RHS is the holder of a promissory note executed for value on May 20, 2002 by Wendell K. Stackhouse and Louise A. Stackhouse ("Borrowers").  The principal amount of the Note was $55,000.00, bearing interest at the rate of 6.125 percent per annum, and payable in monthly installments as specified in the Note.  A copy of the Note is attached as **Exhibit A**, and incorporated by reference as if set forth fully herein.

2

6.     The Note is secured by a Real Estate Mortgage (the "Mortgage") recorded on May 21, 2002, in Mortgage Book 487, Page 447, in the Office of the Clerk of Nelson County, Kentucky.  Through the Mortgage, the Borrowers granted RHS a first mortgage lien against the real property, including all improvements, fixtures and appurtenances thereto, located at 155 Purcell Avenue, Bardstown, Nelson County, Kentucky (the "Property") and described in more detail in the Mortgage.  A copy of the Mortgage is attached as **Exhibit B** and incorporated by reference as if set forth fully herein.

7.     To receive subsidies on the loan, the Borrowers signed a Subsidy Repayment Agreement authorizing RHS to recapture, upon transfer of title or non-occupancy of the Property, any subsidies granted to the Borrowers by RHS.  A copy of the Subsidy Repayment Agreement is attached as **Exhibit C** and incorporated by reference as if set forth fully herein.

8.     Wendell K. Stackhouse passed away on or about August 3, 2004.  A copy of the Certificate of Death is attached as **Exhibit D**.

9.     According to the Deed recorded in Deed Book 388, Page 1 in the Office of the Clerk of Nelson County, Kentucky, the Borrowers owned the Property jointly as tenants by the entirety with right of survivorship.  Therefore, upon the death of Wendell K. Stackhouse all of his title, right and interest in the Property vested in Louise A. Stackhouse, subject to the mortgage interest of the United States.  A copy of the Deed is attached as **Exhibit E**.

10.     Louise A. Stackhouse passed away on or about July 15, 2015.  A copy of the Certificate of Death is attached as **Exhibit F**.

11.     Upon information and belief, Mrs. Stackhouse died intestate.  On October 14, 2015, Pamela V. Swenstad was appointed Administratix of her estate in *In re Estate of Louise A. Stackhouse*, 15-P-00271, Nelson District Court.  In addition, an Affidavit of Descent was

recorded on October 7, 2016 in Deed Book D522, Page 134 with the Nelson County Clerk's Office identifying all of Mrs. Stackhouse's heirs at the time of her death ("Affidavit of Descent"). A copy of the Affidavit of Descent is attached as **Exhibit G**.

12.     Upon information and belief, Louise A. Stackhouse did not remarry after her spouse, Wendell K. Stackhouse, passed away and before her death in July 2015.  In any event, RHS's Mortgage is a purchase money mortgage.  Pursuant to KRS 392.040(1), any surviving spouse shall not have a spousal interest in land sold in good faith after marriage to satisfy an encumbrance created before marriage or to satisfy a lien for the purchase money.

13.     Mrs. Stackhouse failed to make payments due in accordance with the terms and conditions of the Note and Mortgage and has abandoned the property within the meaning of the Mortgage, and is therefore in default.

14.     As a result, RHS has, in accordance with the loan documents, accelerated the loan and declared the entire principal balance, together with all accrued and unpaid interest and all other sums due under the loan documents, to be due and payable.  Further, RHS sent notice of default and acceleration of the loan.

15.     The United States does not seek to impose personal liability against the Borrowers or their heirs for the default on the Note and Mortgage.  On December 15, 2008, Louise Stackhouse filed a Chapter 7 bankruptcy petition in the Bankruptcy Court for the Western District of Kentucky, Case No. 08-35570.  The Bankruptcy Court granted Mrs. Stackhouse a discharge from personal liability on March 24, 2009.

16.     In accordance with the loan documents, the United States is entitled to enforce the Mortgage through this foreclosure action and to have the Property sold to pay all amounts due to RHS, together with the costs and expenses of this action.

17.     The unpaid principal balance on the Note is $43,591.46 with accrued interest of $5,113.25 through March 20, 2018 with a total subsidy granted of $23,077.00, late charges in the amount of $38.85, and fees assessed of $3,389.44, for a total unpaid balance of $75,210.00 as of March 20, 2018.  Interest is accruing on the unpaid principal balance at the rate of $7.8682 per day after March 20, 2018.

18.     The Property is indivisible and cannot be divided without materially impairing its value and the value of RHS's lien thereon.

19.     Defendant **Pamela V. Swenstad** may assert an interest in the Property as an heir of Louise A. Stackhouse as set forth in the Affidavit of Descent. This Defendant is called upon to come forth and assert an interest in or claims to the Property, if any, and offer proof thereof or be forever barred.  Any interest of this defendant is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of the United States.

20.     Defendant **David Joe Avery, Sr.** may assert an Interest in the Property as an heir of Louise A. Stackhouse as set forth in the Affidavit of Descent. This Defendant is called upon to come forth and assert an interest in or claims to the Property, if any, and offer proof thereof or be forever barred.  Any interest of this defendant is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of the United States.

21.     Defendant **Denise Avery** may assert an Interest in the Property as the spouse of an heir of Louise A. Stackhouse. This Defendant is called upon to come forth and assert an interest in or claims to the Property, if any, and offer proof thereof or be forever barred.  Any interest of this defendant is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of the United States.

22.     Defendant **Daniel Lee Avery** may assert an interest in the Property as an heir of Louise A. Stackhouse as set forth in the Affidavit of Descent. This Defendant is called upon to come forth and assert an interest in or claims to the Property, if any, and offer proof thereof or be forever barred.  Any interest of this defendant is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of the United States.

23.     Defendant **Timothy Scott Avery** may assert an interest in the Property as an heir of Louise A. Stackhouse as set forth in the Affidavit of Descent. This Defendant is called upon to come forth and assert an interest in or claims to the Property, if any, and offer proof thereof or be forever barred.  Any interest of this defendant is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of the United States.

24.     Defendant **Any Unknown Heirs of Louise A. Stackhouse and Unknown Spouses of Heirs** may claim an interest in the Property, which interest is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of the United States. Said Defendant is called upon to come forth and assert interests in or claims upon the Property, and offer proof thereof, or be forever barred.

25.     Defendant **Any Unknown Occupant(s), Tenant(s) or Lessee(s) of 155 Purcell Avenue, Bardstown Kentucky** may claim an interest in the Property, which interest is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of the United States.  Said Defendant is called upon to come forth and assert interests in or claims upon the Property, and offer proof thereof, or be forever barred.

26.     In addition to the mortgage indebtedness set out above, the United States of America may hold another claim against and lien upon the Property by virtue of a Federal Tax

Lien against defendant **Daniel L. Avery,** securing the payment of taxes in the amount of $17,974.18, plus all additional penalties, interest, and costs which may accrue.  This Federal Tax Lien was recorded on July 26, 2004 in Encumbrance Book 30, Page 188, in the Nelson County Clerk's Office. A copy of the federal tax lien is attached as **Exhibit H**.  The United States hereby asserts the said claim of the IRS (if any), and requests that it attach to the proceeds of the foreclosure sale of the Property with the same priority as it attaches to the Property.

27.     Defendant **Commonwealth of Kentucky**, Division of Collections may claim an interest in the Property by virtue of a Notice of Lien against Daniel L. Avery recorded on July 25, 2008 in Encumbrance Book 41, Page 493 in the Nelson County Clerk's Office, a copy of which is attached as **Exhibit I**.  The interest of this Defendant is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of RHS, and the United States calls upon this Defendant to come forth and assert its interest in or claim upon the Property, if any, and offer proof thereof, or be forever barred.

28.     Defendant **Commonwealth of Kentucky**, Division of Collections may also claim an interest in the Property by virtue of a Notice of Lien against Daniel Lee Avery recorded on June 14, 2017 in Encumbrance Book 71, Page 226 in the Nelson County Clerk's Office, a copy of which is attached as **Exhibit J**.  The interest of this Defendant is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of RHS, and the United States calls upon this Defendant to come forth and assert its interest in or claim upon the Property, if any, and offer proof thereof, or be forever barred.

29.     There are no other persons or entities purporting to have an interest in the Property known to the United States.

WHEREFORE, Plaintiff, the United States of America, on behalf of RHS, demands:

a.      In rem judgment in favor of the United States in the principal amount of $43,591.46, plus $5,113.25 interest as of March 20, 2018, and $23,077.00 for reimbursement of interest credits, late charges in the amount of $38.85, and fees assessed of $3,389.44, for a total unpaid balance due of $75,210.00 as of March 20, 2018, with interest accruing at the daily rate of $7.8682 from March 20, 2018, until the date of entry of judgment, and interest thereafter according to law, plus any additional costs, disbursements and expenses;

b.      That the United States be adjudged a lien on the Property, prior and superior to any and all other liens, claims, interests and demands, except liens for unpaid real estate ad valorem taxes (if any);

c.      That the United States' lien be enforced and the Property be sold in accordance with Title 28 U.S.C. §§ 2001-2003 subject to easements, restrictions and stipulations of record, but free and clear of all other liens and encumbrances except liens for any unpaid ad valorem real property taxes;

d.      That the proceeds from the sale be applied first to the costs of this action, second to any ad valorem real property taxes, if any, third to the satisfaction of the debt, interest, costs and fees due the United States, with the balance remaining to be distributed to the parties as their liens or interests may appear;

e.      That the Property be adjudged indivisible and be sold as a whole; and

f.      That the United States receive any and all other lawful relief to which it may be

entitled.

UNITED STATES OF AMERICA

RUSSELL M. COLEMAN
United States Attorney


*s/ Katherine A. Bell*
Katherine A. Bell
William F. Campbell
Assistant United States Attorneys
717 West Broadway
Louisville, Kentucky  40202
Phone:  502/582-5911
Fax:    502/625-7110
katherine.bell@usdoj.gov
William.campbell@usdoj.gov

≈JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)   PLAINTIFFS

UNITED STATES OF AMERICA

**(b)**   County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)**   Attorney's (Firm Name, Address, and Telephone Number)

## DEFENDANTS

PAMELA SWENSTAD, ET AL.

County of Residence of First Listed Defendant   NELSON
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

## II.  BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☑ 1   U.S. Government
Plaintiff

☐ 2   U.S. Government
Defendant

☐ 3   Federal Question
(U.S. Government Not a Party)

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III.  CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                              and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☑ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V.  ORIGIN   (Place an "X" in One Box Only)

☑ 1   Original
Proceeding

☐ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
another district
(specify)

☐ 6   Multidistrict
Litigation

☐ 7   Appeal to District
Judge from
Magistrate
Judgment

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
28 U.S.C. SECTION 1345

Brief description of cause:
RURAL HOUSING SERVICE (RHS) f/k/a FARMERS HOME ADMINISTRATION (FmHA) FEDERAL FORECLOSURE

## VII.  REQUESTED IN
COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

**DEMAND $**
$75,210.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☑ No

## VIII.  RELATED CASE(S)
IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE

3/26/2019

SIGNATURE OF ATTORNEY OF RECORD

s/ Katherine A. Bell

**FOR OFFICE USE ONLY**

RECEIPT #                AMOUNT                APPLYING IFP                JUDGE                MAG. JUDGE

USDA-RHS
Form FmHA 1940-16
(Rev. 10-96)

# PROMISSORY NOTE

Type of Loan SECTION 502

Loan No. ▓▓▓▓▓▓

Date: __May 20_____ , _2002_

_____155 Purcell Ave_____
(Property Address)

__Bardstown_____ , __Nelson_____ , __Kentucky____
(City or Town)              (County)              (State)

**BORROWER'S PROMISE TO PAY.** In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors)("Government") $_55,000.00_____ (this amount is called "principal"), plus interest.

**INTEREST.** Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of _6.125___ %.The interest rate required by this section is the rate I will pay both before and after any default described below.

**PAYMENTS.** I agree to pay principal and interest using one of two alternatives indicated below:

☐ I.  Principal and interest payments shall be temporarily deferred. The interest accrued to_____ ,____ shall be added to the principal. The new principal and later accrued interest shall be payable in _____ regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $_____ , and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

☒ II.  Payments shall not be deferred. I agree to pay principal and interest in _396_____ installments as indicated in the box below.

> I will pay principal and interest by making a payment every month.
> I will make my monthly payment on the _20th_ day of each month beginning on _June 20____ , _2002_ and continuing for _395__ months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on _May 20_____ , _2035_ , I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
> My monthly payment will be $_323.86_____ . I will make my monthly payment at __the post office___ __address noted on my billing statement_____ or a different place if required by the Government.

**PRINCIPAL ADVANCES.** If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

**HOUSING ACT OF 1949.** This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

1


EXHIBIT "A"

**LATE CHARGES.** If the Government has not received the full amount of any monthly payment by the end of 15_____ days after the date it is due, I will pay a late charge. The amount of the charge will be 4.000_____ percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once on each late payment.

**BORROWER'S RIGHT TO PREPAY.** I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

**ASSIGNMENT OF NOTE.** I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

**CREDIT ELSEWHERE CERTIFICATION.** I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

**USE CERTIFICATION.** I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

**LEASE OR SALE OF PROPERTY.** If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

**REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT.** I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

**SUBSIDY REPAYMENT AGREEMENT.** I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

**CREDIT SALE TO NONPROGRAM BORROWER.** The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

**DEFAULT.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as describe in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

2

Account # 0█████████

**NOTICES.** Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at <u>USDA / Rural Housing Service, c/o Customer Service Branch, P.O. Box 66889, St. Louis, MO 63166</u>, or at a different address if I am given a notice of that different address.

**OBLIGATIONS OF PERSONS UNDER THIS NOTE.** If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

**WAIVERS.** I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING:** Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.

| _Wendell T. Stackhouse_ ___ Seal | _____ Seal |
|---|---|
| Borrower | Borrower |
| _Louise Stackhouse_ ___ Seal | _____ Seal |
| Borrower | Borrower |

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ | | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | | TOTAL $ | |

Account # ▓▓▓▓▓▓

3

BK 0487 PG 0447

152801

| | Space Above This Line For Recording Data] | |
|---|---|---|
| Form RD 3550-14 KY<br>(8-99) | | Form Approved<br>OMB No. 0575-0172 |

United States Department of Agriculture
Rural Housing Service

## MORTGAGE FOR KENTUCKY

THIS MORTGAGE ("Security Instrument") is made on     May 20           , 2002 .  [Date]
The mortgagor is Wendell K. Stackhouse and his wife, Louise A. Stackhouse

("Borrower").
This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency, United States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center, United States Department of Agriculture. P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called "Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not paid earlier, due and payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| May 20, 2002 | $55,000.00 | May 20, 2035 |

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the property covered by this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note, and (d) the recapture of any payment assistance and subsidy which may be granted to the Borrower by the Lender pursuant to 42 U.S.C. §§ 1472(g) or 1490a. For this purpose, Borrower does hereby mortgage, grant, and convey to Lender the following described property located in the County of    Nelson
, State of Kentucky

which has the address of 155 Purcell Avenue, Bardstown
                                                         [Street]                              ("Property Address");                                    [City]
Kentucky  40004          [ZIP]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.

*According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information*

Page 1 of 6

*WKS*
*LAS*

**EXHIBIT "B"**

BK0487PG0448

Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any.  These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount.  If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount.  Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity.  Lender shall apply the Funds to pay the Escrow Items.  Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge.  However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise.  Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made.  The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law.  If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency.  Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.  If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.**  Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

**4. Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any.  Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph.  If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

Page 2 of 6

Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for all of Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the property.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall maintain the improvements in good repair and make repairs required by Lender. Borrower shall comply with all laws, ordinances, and regulations affecting the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender is not required to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Refinancing.** If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be

Page 3 of 6

BK0487PG0450

applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

**15. Borrower's Copy.** Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

**17. Nondiscrimination.** If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

**18. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security

Page 4 of 6

BK0487PG0451

Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

**19. Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**21. Cross Collateralization.** Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should any one of the parties named as Borrower die or be declared an incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, Lender, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the Property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the Property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

**23.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at Lender's option, any other indebtedness of Borrower owing to Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the Property, Lender and its agents may bid and purchase as a stranger and may pay Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to Lender, in the order prescribed above.

**24.** Borrower agrees that Lender will not be bound by any present or future state laws, (a) providing for valuation, appraisal, homestead or exemption of the Property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which Lender may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the Property to a new Borrower. Borrower expressly waives the benefit of any such state law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

**25. Release.** Upon termination of this mortgage, after payment in full, the mortgagee, at Borrower's expense, shall execute and file or record such instruments of release, satisfaction and termination in proper form pursuant to the requirements contained in KRS 382.365

**26. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and

Page 5 of 6

BK0487PG0452

shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box]

☐ Condominium Rider     ☐ Planned Unit Development Rider     ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider executed by Borrower and recorded with this Security Instrument

_Wendell Stackhouse_ [SEAL]
Wendell K. Stackhouse — Borrower

_Louise Stackhouse_ [SEAL]
Louise A. Stackhouse — Borrower

**STATE OF KENTUCKY**    }  ss:        **ACKNOWLEDGMENT**
**COUNTY OF** ____Nelson____

Before me, ____Karen D. Parrott____, a Notary Public in and for the County of ____
Nelson____, personally appeared ____Wendell K. Stackhouse and wife____,
____Louise A. Stackhouse____ who acknowledged that ____they____ executed the
foregoing instrument on the ____20____ day of ____May____ ____2002____ as ____their____ free act
and deed.

WITNESS my hand and official seal this ____20th____ day of ____May____ ____2002____

[SEAL]

_Karen D. Parrott_ Notary
Public Ky State at large
My commission expires ____10/01/04____

**PREPARER'S STATEMENT**

The form of this instrument was drafted by the Office of the General Counsel of the United States Department of Agriculture, and the material in the blank spaces in the form was inserted by or under the direction of:

____John David Seay____                    _John David Seay_
(Name)                                       (Signature)

____Seay & Reynolds, 108 South Third Street, Bardstown, KY 40004____
(Address)

**RECORDER'S CERTIFICATE**

**STATE OF KENTUCKY**    }  ss:
**COUNTY OF** ____NELSON____

**PHYLLIS S. MATTINGLY**

I, ____, Clerk of the County Court for the County aforesaid, do certify that the foregoing mortgage was on the ____21____ day of ____MAY____ ____2002____ lodged for record ____ at ____9 13____ o'clock ____A____ M., whereupon the same, with the foregoing and this certificate, have been duly recorded in my office.

Given under my hand this ____21____ day of ____MAY____ ____2002____

ATT: PHYLLIS S. MATTINGLY
Clerk of NELS County Court
By _____ D.C.

Page 6 of 6

BK 0487 PG 0453

*LEGAL DESCRIPTION*

Being Lot 131 of Salem Hills Subdivision, Phase III, as shown on plat of same recorded in Plat Cabinet 2, Slot 170, in the Nelson County Clerk's Office.

Being the same property which Wendell K. Stackhouse and his wife, Louise A. Stackhouse, acquired title from Distinctive Properties, Inc., a Kentucky Corporation, of record in Deed Book 388, Page 1 in the Nelson County Clerk's Office.



Form RHS 3550-12
(10-96)

United States Department of Agriculture
Rural Housing Service

Form Approved
OMB No. 0575-0166

Account #: 

## SUBSIDY REPAYMENT AGREEMENT

1.  As required under Section 521 of the Housing Act of 1949 (42 U.S.C. 1490a), subsidy received in accordance with Section 502 of the Housing Act of 1949, is repayable to the Government upon the disposition or nonoccupancy of the security property. Deferred mortgage payments are included as subsidy under this agreement.

2.  When I fail to occupy or transfer title to my home, recapture is due. If I refinance or otherwise pay in full without transfer of title and continue to occupy the property, the amount of recapture will be calculated but, payment of recapture can be deferred, interest free, until the property is subsequently sold or vacated. If deferred, the Government mortgage can be subordinated but will not be released nor the promissory note satisfied until the Government is paid in full. In situations where deferment of recapture is an option, recapture will be discounted 25% if paid in full at time of settlement.

3.  Market value at time of initial subsidy $ 70,000.00 less amount of Rural Housing Service (RHS) loans $55,000.00 less amount of any prior liens $ 14,999.00 equals my/our original equity $1.00 . This amount equals 0.0 % of the market value as determined by dividing original equity by the market value.

4.  If all loans are not subject to recapture, or if all loans subject to recapture are not being paid, complete the following formula. Divide the balance of loans subject to recapture that are being paid by the balance of all open loans. Multiply the result by 100 to determine the percent of the outstanding balance of open loans being paid.

5.

| months loan outstanding | | Average interest rate paid | | | | | |
|---|---|---|---|---|---|---|---|
| | 1% | 1.1 2% | 2.1 3% | 3.1 4% | 4.1 5% | 5.1 6% | 6.1 7% | >7% |
| 0 - 59 | .50 | .50 | .50 | .50 | .44 | .32 | .22 | .11 |
| 60 - 119 | .50 | .50 | .50 | .49 | .42 | .31 | .21 | .11 |
| 120 - 179 | .50 | .50 | .50 | .48 | .40 | .30 | .20 | .10 |
| 180 - 239 | .50 | .50 | .49 | .42 | .36 | .26 | .18 | .09 |
| 240 - 299 | .50 | .50 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 - 359 | .50 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 & up | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

6.  Calculating Recapture
    Market value (at the time of transfer or abandonment)
    LESS:
        Prior liens
        RHS balance,
        Reasonable closing costs,
        Principal reduction at note rate,
        Original equity (see paragraph 3), and
        Capital improvements.
    EQUALS
        Appreciation Value. (If this is a positive value, continue.)
    TIMES
        Percentage in paragraph 4 (if applicable),
        Percentage in paragraph 5, and
        Return on borrower's original equity (100% - percentage in paragraph 3).
    EQUALS
        Value appreciation subject to recapture. Recapture due equals the lesser of this figure or the amount of subsidy received.

| Borrower | Date |
|---|---|
| *Worrell R. Stockhouse* | May 20, 2002 |

| Borrower | Date |
|---|---|
| *Louise Stockhouse* | May 20, 2002 |

Public reporting burden for this collection of information is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to U.S. Department of Agriculture, Clearance Officer, STOP 7602, 1400 Independence Avenue, S.W., Washington, D.C. 20250-7602. Please DO NOT RETURN this form to this address. Forward to the local USDA office only. You are not required to respond to this collection of information unless it displays a currently valid OMB control number.

## EXHIBIT "C"

Oct 23 2015 10:05:48    18556129600         ->              U.S. Department of A   Page 006

VERIFICATION
NOIA CERTIFIED COPY

COMMONWEALTH OF KENTUCKY
CABINET FOR HEALTH SERVICES
REGISTRAR OF VITAL STATISTICS

115    4 oct 02 #24214729

**CERTIFICATE OF DEATH**

FILE NO.   000004

1. DECEDENT'S NAME: Wendell Keith Stackhouse    SEX: Male    6. DATE OF DEATH: Aug 3, 2004

2. SOCIAL SECURITY NO.    AGE: 49    DATE OF BIRTH: Flat Rock Illinois

9. HOSPITAL: Flaget Memorial Hospital    Bardstown    Nelson

Married    Louise Weitzel    Accountant    public accounting

Kentucky    Nelson    Bardstown    155 Purcell Avenue

40004    White

17. FATHER'S NAME: Sherman Stackhouse    MOTHER'S NAME: Verna Mae Sprigns

Louise Stackhouse    155 Purcell Avenue Bardstown, KY 40004

Burial ☐  Cremation ☒    Vogt Cremation Service    Louisville, KY 40218

Houghlin-Greenwell Funeral Home, Inc.
211 South 3rd Street, Bardstown, KY 40004

Dr. Jason Boulds  300 West John Fitch Avenue, Bardstown, KY 40004

06:00 AM    August 3, 2004

IMMEDIATE CAUSE: Septic Shock    5 hr

DUE TO (OR AS A CONSEQUENCE OF): Mesenteric Ischemia

Rectal Cancer

AUG 05 2004

MAY 2 8 2002

BK0388PG0001

152790

70.00

This **DEED** made and entered into this _20_ day of

May, 2002, by and between -

**DISTINCTIVE PROPERTIES, INC.**, a Kentucky

corporation under the laws of the Commonwealth of Kentucky,

with a post office address of 112 Reardon Blvd., Bardstown,

Kentucky 40004, party of the first part, and

**WENDELL K. STACKHOUSE** and his wife, **LOUISE A.**

**STACKHOUSE**, whose post office address and residence is 155

Purcell Avenue, Bardstown, Kentucky  40004, parties of the

second part.

**WITNESSETH:**

That for and in consideration of SEVENTY THOUSAND

DOLLARS ($70,000.00), cash in hand paid, the receipt of which

is hereby acknowledged, party of the first part has sold and

does by these presents sell, transfer and convey unto the

parties of the second part, for and during their joint

natural lives, with the remainder in fee simple to the

survivor of them, his or her heirs and assigns forever, the

following described real estate, to-wit:

> Being Lot 131 of Salem Hills Subdivision, Phase III as
> shown on plat of same recorded in Plat Cabinet 2, Slot
> 170 in the Clerk's Office of the Nelson County Court.

> Being a part of the same property to which Distinctive
> Properties, Inc., acquired title by deed from Carey and
> Chowning, Inc., dated July 3, 1995, which deed is
> recorded in Deed Book 322, page 399, in the Nelson
> County Court Clerk's Office.

This conveyance is made subject to all legal roads,

easements and restrictions, apparent or of record, including

those shown on the Plat of Salem Hills Subdivision Phase III,

recorded in Plat Cabinet 2, Slot 170, and the Restrictive and

Protective Covenants for Salem Hills Subdivision, Phase III,

as recorded in Deed Book 321, page 200 in the Nelson County

Court Clerk's Office.

**EXHIBIT "E"**

BK0388PG0002

This deed is made by the authority of the Board of Directors of the first party as reflected by the minutes in the minute book of said corporation.

TO HAVE AND TO HOLD Unto the said second parties, for and during their joint natural lives, with the remainder in fee simple to the survivor of them, his or her heirs and assigns forever, with COVENANT OF GENERAL WARRANTY; and first party covenants with second parties that it is seized of a good fee simple title to the aforesaid real estate.

IN TESTIMONY WHEREOF, the party of the first part has hereunto subscribed its name the day and date first above written, and first party and second parties further state that the consideration reflected in this deed is the full consideration paid for the property.  Second parties join in the execution of this deed for the sole purpose of certifying the consideration pursuant to KRS 382.

DISTINCTIVE PROPERTIES, INC.

BY: _____
JACK HURST, President

BY: _____
TERRY L. GEOGHEGAN, Secretary

_____
WENDELL K. STACKHOUSE

_____
LOUISE A. STACKHOUSE

STATE OF KENTUCKY
COUNTY OF NELSON

The foregoing Deed and Consideration Certificate was acknowledged and sworn to before me by JACK HURST, President and TERRY L. GEOGHEGAN, Secretary of DISTINCTIVE PROPERTIES, INC., first party herein, on this 20 day of May, 2002.

_____
NOTARY PUBLIC, KY. STATE AT LARGE
My Commission Expires: 10.01.04

BK0386PG0003

STATE OF KENTUCKY

COUNTY OF NELSON

     The foregoing Consideration Certificate was acknowledged and sworn to before me by WENDELL K. STACKHOUSE and his wife, LOUISE A. STACKHOUSE, second parties herein, this _20_ day of May, 2002.

                NOTARY PUBLIC, KY. STATE AT LARGE

                My Commission Expires: _10.21.04_

     The foregoing instrument was prepared by the law firm of GEOGHEGAN & ASSOCIATES, 116 East Stephen Foster Avenue, Bardstown, Kentucky.

CCS/dr

*Title not examined by this preparer!



a:dist12a/4-6

Oct 23 2015 10:06:56     18556129600          ->          U.S. Department of A Page 007

## KENTUCKY CERTIFICATE OF DEATH

116 201624409
Case #: B201507170067

**1a. DECEDENT'S LEGAL NAME** (First, Middle, Last) (include AKA's if any)
LOUISE AVERY STACKHOUSE

**1b. IF FEMALE, DECEDENT'S LAST NAME PRIOR TO FIRST MARRIAGE**
NEITZEL

**2. SEX**
FEMALE

**3. SOCIAL SECURITY NUMBER**
[redacted]126

**4a. AGE-Last Birthday (Years)**
78

**4b. UNDER 1 YEAR**

**4c. UNDER 1 DAY**

**5. DATE OF BIRTH** (Mo/Day/Yr)
[redacted]

**6. COUNTY OF BIRTH**
NELSON

**7. DATE OF DEATH** (Check only one)
July 16, 2015

**8. PLACE OF DEATH** (Check only one)
HOSPITAL: ☐ Inpatient  ☐ ER/Outpatient  ☐ Dead on Arrival OTHER: ☐ Hospice Facility ☒ Nursing Home/Long Term Care Facility ☐ Residence ☐ Other (Specify)

**8a. FACILITY NAME** (If not institution, give street and number)

**9. RESIDENCE-STATE**
164 PURCELL AVE

**9b. CITY OR TOWN, STATE AND ZIP CODE**
BARDSTOWN, KY 40004

**10. MARITAL STATUS**
☐ Married  ☒ Widowed  ☐ Never Married  ☐ Married but separated  ☐ Divorced  ☐ Unknown

**11. SURVIVING SPOUSE** (wife, give name prior to first marriage)

**13. BIRTHPLACE** (City and State or Foreign Country)
BARDSTOWN, KENTUCKY

**14. DECEDENT'S USUAL OCCUPATION** (Indicate type of work done during most of working life)
HOMEMAKER

**15. KIND OF BUSINESS/INDUSTRY**
DOMESTIC

**16. WAS DECEDENT EVER IN U.S. ARMED FORCES?**
☐ Yes ☒ No

**17a. RESIDENCE – State**
KENTUCKY

**17b. COUNTY**
NELSON

**17c. CITY OR TOWN**
BARDSTOWN

**17d. STREET AND NUMBER**
164 PURCELL AVE

**17e. ZIP CODE**
40004

**17f. INSIDE CITY LIMITS?**
☒ Yes ☐ No

**18. DECEDENT'S EDUCATION**
☐ 8th Grade or less
☐ 9th - 12th Grade; No Diploma
☐ High School Graduate or GED Completed
☐ Some College Credit but No Degree
☐ Associate Degree (e.g., AA, AS)
☐ Bachelor's Degree (e.g., BA, AB, BS)
☐ Master's Degree (e.g., MA, MS, MEng, MEd, MSW, MBA)
☐ Doctorate (e.g., PhD, EdD) or Professional Degree (e.g., MD, DDS, DVM, LLB, JD)

**19. DECEDENT OF HISPANIC ORIGIN?** (Check the box that best describes whether the decedent is Spanish/Hispanic/Latina. Check the "No" box if decedent is not Spanish/Hispanic/Latina)
☒ No, not Spanish/Hispanic/Latina
☐ Yes, Mexican, Mexican American, Chicana
☐ Yes, Puerto Rican
☐ Yes, Cuban
☐ Yes, other Spanish/Hispanic/Latina (Specify)

**20. DECEDENT'S RACE**
☒ White
☐ Black or African American
☐ Native Hawaiian
☐ American Indian
☐ Chinese
☐ Filipino
☐ Japanese
☐ Guamanian or Chamorro
☐ Korean
☐ Vietnamese
☐ Samoan
☐ Other Asian (Specify)
☐ Other Pacific Islander (Specify)
☐ American Indian or Alaska Native (Name of the enrolled or principal tribe)
☐ Other (Specify)

**21. FATHER'S NAME** (First, Middle, Last)
HERB NEITZEL

**22. MOTHER'S NAME PRIOR TO FIRST MARRIAGE** (First, Middle, Last)
FLORILLA BARNES

**23a. INFORMANT'S NAME**
SCOTT AVERY

**23b. RELATIONSHIP TO DECEDENT**
SON

**23c. MAILING ADDRESS** (Street and Number, City, State, Zip Code)
128 BARBERRY LANE, BARDSTOWN, KY 40004

**24. METHOD OF DISPOSITION** (Check only one)
☐ Burial ☒ Cremation ☐ Donation ☐ Entombment ☐ Removal from State ☐ Other (Specify)

**25. PLACE OF DISPOSITION** (Name of cemetery, crematory, or other place)
BORDEN CREMATORY

**26. LOCATION – City, Town, and State**
LOUISVILLE, KY

**27. SIGNATURE OF FUNERAL SERVICE LICENSEE** (or person acting as such)
SHEILA M. SPALDING

**28. DATE SIGNED**
07/21/2015

**29. KY LICENSE NUMBER** (of licensee)
5540

**30. NAME AND COMPLETE ADDRESS OF FUNERAL FACILITY**
HOUGHLIN-GREENWELL FUNERAL HOME
1475 NEW SHEPHERDSVILLE ROAD
BARDSTOWN, KY 40004

**30. DATE PRONOUNCED DEAD** (Mo/Day/Yyyy)
07/16/2015

**31. ACTUAL OR PRESUMED TIME OF DEATH**
0800

**32. WAS MEDICAL EXAMINER OR CORONER CONTACTED?**
☐ Yes ☒ No

**33. PART I. Enter the chain of events - diseases, injuries, or complications - that directly caused the death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE. Enter only one cause on each line. Add additional lines if necessary.**

CAUSES OF DEATH

IMMEDIATE CAUSE (Final disease or condition resulting in death) a. SEPSIS

Sequentially list conditions, if any, leading to the cause listed on line a. Enter the UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST

b. DRUG RESISTANT UTI DUE TO E. COLI AND PSEUDOMONAS
c. FAILURE TO THRIVE-Y
d. DUE TO (OR AS A CONSEQUENCE OF)

Approximate interval Onset to Death
1 WEEK(S)
3 WEEK(S)
4 MONTH(S)

PART II. Enter other significant conditions contributing to death but not resulting in the underlying cause given in Part I.
TYPE 2 DIABETES, GAD, COPD, CHRONIC RENAL FAILURE, PROTEIN-CALORIE MALNUTRITION, PVD

**34. MANNER OF DEATH**
☒ Natural  ☐ Accident
☐ Homicide  ☐ Pending Investigation
☐ Suicide  ☐ Could not be Determined

**35. WAS AN AUTOPSY PERFORMED?**
☐ Yes ☒ No

**36. WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH?**
☐ Yes ☐ No

**37. DID TOBACCO USE CONTRIBUTE TO DEATH?**
☐ Yes  ☐ Probably
☒ No  ☐ Unknown

**38. IF FEMALE:**
☒ Not pregnant within past year
☐ Not pregnant, but pregnant within 19 days of death
☐ Not pregnant, but pregnant 43 days to 1 year before death
☐ Pregnant at time of death
☐ Unknown if pregnant within past year

**39. DATE OF INJURY** (Mo/Day/Yr) (Spell Month)

**40. TIME OF INJURY**

**41. INJURY AT WORK?**
☐ Yes ☐ No

**42. PLACE OF INJURY** (e.g., Decedent's home; construction site; restaurant, wooded area)

**43. IF TRANSPORTATION INJURY, SPECIFY:**
☐ Driver/Operator ☐ Pedestrian
☐ Passenger ☐ Other (Specify)

**44. DESCRIBE HOW INJURY OCCURRED:**

**45. LOCATION OF INJURY** (Street and Number, City or Town, State, Zip Code)

**46. TO BE COMPLETED BY CERTIFIER**
To the best of my knowledge, death occurred at the time, date, and place, and due to cause(s) and manner stated.
SIGNATURE  JACOB W. VINCENT, MD

**47. DATE CERTIFIED** (Mo/Day/Yyyy)
07/20/2015

**48. LICENSE NUMBER**
34239

**49. TITLE OF CERTIFIER**
PHYSICIAN

**50. NAME, ADDRESS, AND ZIP CODE OF PERSON COMPLETING CAUSE OF DEATH (ITEM 33)**
HMH FAMILY MEDICAL CENTER, 201 S. 8TH ST, BARDSTOWN, KY 40004     JACOB VINCENT

**51. REGISTRAR'S SIGNATURE**
Paul F. Royce

**52. DATE FILED** (Mo/Day/Yyyy)
07/27/2015

FORM VS NO. 1-A (REVISED)

# EXHIBIT "F"

Book D522 Page 134

## AFFIDAVIT OF DESCENT
## AND AFFIDAVIT AS TO VALUE PER KRS 382.135(4)

STATE OF KENTUCKY
COUNTY OF NELSON

Come the undersigned affiant, Pamela V. Swenstad, and after first being duly sworn,

states as follows:

1. That Louise A. Stackhouse died intestate a resident of Nelson County, Kentucky, on

the 15th day of July, 2015.

2. That the affiant, Pamela V. Swenstad, was appointed Administratrix of the Estate of

Louise A. Stackhouse by Order of the Nelson District Court entered on the 14th day of October,

2015, Case No. 15 – P – 00271.

3. That the said Louise A. Stackhouse, at the time of her death, was unmarried and left

surviving her the following persons as her only heirs at law having an estate of inheritance in her

land, to-wit:

| NAME | AGE | RELATIONSHIP | INT. INH. |
|------|-----|--------------|-----------|
| Pamela V. Swenstad<br>1259 Halcydale Road<br>Sylvania, GA 30467 | 21+ | Child | 25% |
| David Avery, Sr.<br>1259 Halcydale Road<br>Sylvania, GA 30467 | 21+ | Child | 25% |
| Daniel Avery<br>2780 Bennets Lane<br>Bardstown, KY 40004 | 21+ | Child | 25% |
| Timothy Scott Avery<br>126 Barberry Lane<br>Bardstown, KY 40004 | 21+ | Child | 25% |

**LOUISE A. STACKHOUSE AT THE TIME OF HER DEATH, OWNED AN
UNDIVIDED ONE HUNDRED PERCENT (100%) INTEREST IN THE PROPERTY**

**EXHIBIT "G"**

Book D522 Page 135

DESCRIBED IN DEED BOOK 388, PAGE 1, IN THE NELSON COUNTY CLERK'S OFFICE. THAT THE FAIR ESTIMATED CASH VALUE OF THE DECEDENT'S INTEREST IN THE PROPERTY DESCRIBED THEREIN IS $71,500.00.

4. The affiant has executed and delivered this Affidavit pursuant to KRS 382.120 and KRS 382.135(4).

IN TESTIMONY WHEREOF I have hereunto subscribed her name this _15th_ day of _May_, 2016.

_Pamela V Swenstad_
Pamela V. Swenstad

Commonwealth of Kentucky
County of Nelson

I, a Notary Public, in and for the state and county aforesaid do hereby certify that the foregoing Affidavit of Descent was produced before me in said county and state, and acknowledged and sworn by Pamela V. Swenstad, and executed this document as her free act and deed and that she is known to me, or if not known to me, presented satisfactory evidence to me that she is the person described in and who executed the instrument. Given under my hand this _15_ day of _May_, 2016.

My Commission expires: _7-23-2018_

_Belinda A Bramfield_
Notary Public

The foregoing instrument was prepared by Janie Asher Hite, Attorney at Law, at the law offices of Hite & Pottinger, PLLC, 602 Bloomfield Road, Bardstown, Kentucky 40004.

_Janie C Hite_

T:\TM-Docs\Stackhouse, Louise A. - Estate\AFDT\Affidavit of Descent-160922-BJT.docx

2016012215
NELSON CO, KY FEE $13.00
PRESENTED / LODGED: 10-07-2016 02:38:46 PM

RECORDED: 10-07-2016
ELAINE A. FILIATREAU
CLERK
BY: ANGELA PIERCE
DEPUTY CLERK

BK: DEED D522
PG: 134-135

BK0030PG0188

Form 668 (Y)(c)
(Rev. February 2004)

Department of the Treasury - Internal Revenue Service
## Notice of Federal Tax Lien

**Area:**
SMALL BUSINESS/SELF EMPLOYED AREA #6
Lien Unit Phone: (800) 829-3903

**Serial Number**

**For Optional Use by Recording Office**

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

**Name of Taxpayer** DANIEL L AVERY

**Residence**   624 N 3RD ST # 105
BARDSTOWN, KY 40004-1852

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/1994 | | 06/23/1997 | 07/23/2007 | 17974.18 |

**Place of Filing**
COUNTY COURT CLERK
NELSON COUNTY
BARDSTOWN, KY 40004

Total $ 17974.18

This notice was prepared and signed at   DETROIT, MI   , on this,

the   16th   day of   July   ,   2004   .

**Signature**                        **Title**
for PATRICK ROUAN                    ACS   (800) 829-3903        26-00-0008

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

**EXHIBIT "H"**

12A517-2
10-1996

NELSON COUNTY
**ENC41  PG 493**

DCLNFLYY
20080721135S001
State: M22

NOTICE OF LIEN

Notice is hereby given that taxes, penalty, interest and other debts owed the Commonwealth have been assessed against the following named debtor, which after demand for payment thereof remains unpaid.

DANIEL L AVERY
2780 VENNITTS LN
BARDSTOWN          KY 40004

Pursuant to the provisions of Kentucky Revised Statute 134.420(2), a lien exists in favor of the Commonwealth of Kentucky upon all of the debtor's interest in property, either real or personal, tangible or intangible, now owned or subsequently acquired.

CASE NUMBER:

DEBTOR IDENTIFICATION NUMBER:

The amount of taxes, penalty, interest and other debts constitutes the amount of the lien.  Payment of that amount, plus payment of the recording fees charged by KRS 64.012, is required before a lien release can be authorized. Upon request, the Commonwealth must disclose the specific amount of liability owed calculated to a certain date to any interested party legally entitled to such information. Inquiries should be made to Division of Collections, 501 High Street, P. O. Box 491, Frankfort, Kentucky 40602 or phone (502) 564-4921, Ext. No. 5352.

Commonwealth of Kentucky, Department of Revenue, Division of Collections

CLERK'S RECORD OF FILING OF COMMONWEALTH'S LIEN

I certify that this lien is filed in the NELSON County Clerk's Office:

Book _____  Page _____  County Clerk _____

Date _____  Time _____  Deputy Clerk _____

Locator No. _____  County of Record  NELSON

Individual Collection Branch        Date Prepared:  07/21/2008
Division of Collections
Department of Revenue

DOCUMENT NO: 220669
RECORDED ON: JULY 25, 2008 10:43:00AM
COUNTY CLERK: PHYLLIS S. MATTINGLY
COUNTY:         NELSON COUNTY
BOOK ENC41 - PAGES 493 - 492 ENC

PAGE 3 OF 4

**EXHIBIT "I"**

Book ENC71 Page 226

12A517-2
08-2014

**Commonwealth of Kentucky**
**Department of Revenue**
**Division of Collections**

IT87
2000000308514
LINLTRTX

NOTICE OF LIEN

Notice is hereby given that taxes, penalty, interest, fees and other debts owed the Commonwealth have been assessed against the following named debtor, which after demand for payment remain unpaid.

DANIEL LEE AVERY

2780 BENNETT LN
BARDSTOWN, KY 40004-8828

Pursuant to the provisions of Kentucky Revised Statutes 131.515, a lien exists in favor of the Commonwealth of Kentucky upon all the debtor's interest in property, either real or personal, tangible or intangible, now owned or subsequently acquired.

CASE NUMBER: 2000000308514

TIN: XXX-XX-8274
TIN:

The amount of taxes, penalty, interest, fees and other debts constitutes the amount of the lien. Payment of that amount, plus payment of the recording fees charged by KRS 64.012, is required before a lien release can be authorized. Upon request, the Commonwealth must disclose the specific amount of liability owed, calculated to a certain date, and to any interested party legally entitled to such information. Inquiries should be made to INDIVIDUAL INCOME TAX SECTION, 501 HIGH STREET, P.O. BOX 491, FRANKFORT, KY 40602-0491 or phone (502)564-4921 Ext. 5354.

Commonwealth of Kentucky, Department of Revenue, DIVISION OF COLLECTIONS

CLERK'S RECORD OF FILING OF COMMONWEALTH'S LIEN

I certify that this lien is filed in the NELSON County Clerk's Office:

Book _____ Page _____ County Clerk _____

Date _____ Time _____ Deputy Clerk _____

Locator No. _____ County of Record NELSON

INDIVIDUAL INCOME TAX SECTION                           Date Prepared: 06/08/2017
Department of Revenue

2017067008
NELSON CO, KY FEE $5.00
RECORDED: 06-14-2017
ELAINE A. FILIATREAU
CLERK
BRANDA ATHERTON
DEPUTY CLERK
BK: EN ENC71
PG: 226-226

KentuckyUnbridledSpirit.com                            An Equal Opportunity Employer M/F/D

**EXHIBIT "J"**